**OREGON NATURAL DESERT ASSOCIATION, a nonprofit corporation, Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF THE INTERIOR, Defendant.**

No. Civ. 97–535–HU.

United States District Court, D. Oregon.

April 13, 1998.

Jack Sterne, Camp Sherman, Oregon, for plaintiff.

Kristine Olson, United States Attorney, Judith Kobbervig, Assistant United States Attorney, Portland, Oregon, for defendant.

## ORDER

MARSH, District Judge.

Magistrate Hubel filed his Findings and Recommendation on January 20, 1998. The matter is now before me pursuant to 28 U.S.C. § 636(b)(1)(B) and Fed.R.Civ.P. 72(b). When either party objects to any portion of the Magistrate's Findings and Recommendation, the district court must make a *de novo* determination of that portion of the Magistrate's report. *See* 28 U.S.C. § 636(b)(1)(C); *McDonnell Douglas Corp. v. Commodore Business Machines, Inc.*, 656 F.2d 1309, 1313 (9th Cir.1981), *cert. denied,* 455 U.S. 920, 102 S.Ct. 1277, 71 L.Ed.2d 461 (1982).

Defendant has filed timely objections. I have, therefore, given the file of this case a *de novo* review.

Both parties agree that Judge Hubel erred in citing the four-factor test set forth in *Multnomah Co. Medical Society v. Scott,* 825 F.2d 1410, 1413 (9th Cir.1987). Although this case has never been expressly overturned, its four factor analysis has been effectively superseded by the exclusive two-factor test most recently set forth in *Bibles v. Oregon Nat'l Desert Ass'n,* 519 U.S. 335, 117 S.Ct. 795, 136 L.Ed.2d 825 (1997).

Although Judge Hubel cites the older 4–factor test, I find that his analysis properly focussed upon the two factors identified in *Bibles.* In reaching his conclusion, Judge Hubel cited the appropriate balancing test on pages 6 and 9 and specifically notes on page 6 that the purposes of the FOIA request should be irrelevant. Judge Hubel properly placed the burden of non-disclosure on the government and, under *United States Dep't of Justice v. Reporters Comm. for Freedom of Press,* 489 U.S. 749, 756, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989) and *Rosenfeld v. United States Dep't of Justice,* 57 F.3d 803, 811 (9th Cir.1995), *cert. dismissed,* 516 U.S. 1103, 116 S.Ct. 833, 133 L.Ed.2d 832 (1996), properly focussed upon the fact that the requested information was likely to reveal information about government conduct and would not focus upon information about private citizens. I also agree with Judge Hubel's conclusion that although information about commercial interests should not be categorically excluded from the exemption, the fact that the information sought relates to commercial rather than individual interests indicates a diminished expectation of privacy and weighs in the balance in favor of disclosure.

I also find that Judge Hubel properly rejected the government's claim that raw data used in support of an environmental assessment and draft management plan should not be disclosed pursuant tot he fee waiver criteria under applicable regulations and *Friends of the Coast Fork v. U.S. Department of the Interior,* 110 F.3d 53 (1997).[1] Such data will shed light on how the agency summarized and applied information and contribute to public understanding of the management of the grazing allotment.

Accordingly, I ADOPT the Findings and Recommendation # 27 of Magistrate Hubel and defendant's motion for summary judgment # 9 is DENIED and plaintiff's cross-motion for summary judgment # 13 is GRANTED.

IT IS SO ORDERED.

## FINDINGS AND RECOMMENDATION

HUBEL, United States Magistrate Judge.

Oregon Natural Desert Association ("ONDA") filed suit under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 against the Department of Interior ("DOI"), Bureau of Land Management ("BLM"). ONDA challenges defendant's decision to withhold the names of cattle trespassers from documents and denying a fee waiver request. Before the court is defendant's motion (# 9) for summary judgment and plaintiff's cross-motion (# 13) for summary judgment.

## BACKGROUND

Both parties filed concise statements of material fact pursuant to Local Rule 220–9(a) & (b). Pursuant to subsection (f) of that rule, material facts in the moving party's concise statement that are not expressly con-

---

1. I have also shepardized the regulations set forth at page 14 of Judge Hubel's Findings and Recommendations.

troverted are deemed admitted. The material facts before the court are undisputed.

On March 14, 1996, plaintiff requested ten categories of documents from the BLM's Burns District Office pursuant to FOIA. Part of this request included "[a]ll documents relating to illegal use or trespass by cattle within the last ten years ("trespass documents")." Pl.Exh. 1 at 1.[1] In its letter, plaintiff requested a full fee waiver for the document search, but was willing to pay $20.00 if the request was denied. *Id.* The document request was intended to "assist [ONDA's] prosecution of an administrative appeal of the Allotment Management Plan (AMP) For the Pueblo–Lone Mountain allotment. Pl. Exh. 2 at 1. The letter also stated:

> These documents will illuminate in a clear and direct way the operations and activities of the BLM with respect to grazing on the allotment and will corroborate many of the allegations made in ONDA's appeal of the AMP. Accordingly, their release will also greatly benefit the public, which has an interest in seeing that public lands are managed in compliance with federal law. ONDA's appeal helps insure that the agency is managing the allotment properly. ONDA will also use the requested information to further the public's understanding of the effects of grazing on the ecology of the desert of eastern Oregon. ONDA will disseminate this information through its newsletter and to public interest groups and agencies in Oregon.

*Id.* at 2.

On April, 10, 1996, the Oregon BLM director responded to plaintiff's FOIA request. For the most part, the request was granted. However, the BLM denied plaintiff's request for the trespass documents under exemptions 6 and 7 of FOIA. BLM did not rule on plaintiff's statutory fee waiver request.

On May 7, 1996, plaintiff filed a timely administrative appeal of BLM's denials with the DOI. In the relevant portion of its appeal letter, plaintiff stated:

> The identity of the trespasser is relevant to determine whether the steps the Agency has taken to prevent such trespass will

indeed be effective to prevent future trespass. Is this a local rancher or someone who has transported his cattle to the allotment? Is the trespasser a repeat offender whose grazing permit should be canceled? The identity of the trespasser is obviously pertinent to any analysis of how well the government is carrying out its statutory responsibilities.

> Furthermore, the identities of citizens who break laws are normally a matter of public record and should not be shielded by law enforcement authorities. Once an individual breaks the law, he has little expectation of privacy in so far as the fact of his lawbreaking activities is concerned. He may have a right to privacy in personal information.... ONDA, however, has not requested any personal information about these individuals, other than their identities....

Pl.Exh. 2 at 3.

After acknowledging a delay in processing the appeal, DOI ruled on the matter on January 23, 1997. DOI released the withheld trespass documents, but redacted the names of those cited for cattle trespass violations, again citing exemptions 6 and 7. Also, DOI granted plaintiff a fee waiver for the trespass documents but denied the waiver for all other information. DOI justified the denial because the agency felt "that it is unlikely that release of this material would make a significant contribution to the public's understanding of these activities." Pl.Exh. 3 at 3.

## STANDARD

Summary judgment should be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). If the moving party shows there are no genuine issues of material fact, the non-moving party must go beyond the pleadings and designate facts showing an issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The substantive law governing a claim determines whether a fact is material. *Anderson v. Liberty Lobby, Inc.,* 477 U.S.

---

**1.** References to plaintiff's exhibits are to those attached to its memorandum in support of its motion for summary judgment, (# 14).

242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also T.W. Elec. Service v. Pacific Elec. Contractors,* 809 F.2d 626, 630 (9th Cir.1987). Reasonable doubts as to the existence of a material factual issue are resolved against the moving party. *T.W. Elec. Service,* 809 F.2d at 631. Inferences drawn from facts are viewed in the light most favorable to the non-moving party. *Id.* at 630–31.

In reviewing agency actions under FOIA, the court conducts a de novo review, however, that review is limited to the record before the agency. 5 U.S.C. § 552(a)(4)(A)(vii) & (B).

## DISCUSSION

The two issues the court must decide are relatively straightforward. First, the court must determine if BLM is required to release the names of the cattle trespassers. The second issue is whether plaintiff is entitled to a fee waiver for all documents other than the trespass documents.

While cases with similar factual backgrounds were located, no cases were found or provided to the court which deal with FOIA's application to a request only seeking the names of individuals who admittedly violated federal laws.

### I. FOIA Exemptions

FOIA was enacted with the objective of full agency disclosure of its administrative records unless explicitly exempted by clear statutory language. *Department of Air Force v. Rose,* 425 U.S. 352, 360–61, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976). The exemptions contained therein are exclusive and must be construed narrowly. *Id.* FOIA exemption 6 exempts from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemption 7 exempts "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ... (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy...." *Id.* at (b)(7)(C). Under both exemptions 6 and 7, "the only relevant public interest in the FOIA balanc-

ing analysis is the extent to which disclosure of the information sought would shed light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to." *Bibles v. Oregon Nat'l Desert Assoc.,* 519 U.S. 335, 117 S.Ct. 795, 795, 136 L.Ed.2d 825 (1997)(quotations omitted); *Rosenfeld v. United States Dep't of Justice,* 57 F.3d 803, 811 (9th Cir.1995), *cert. dismissed,* 516 U.S. 1103, 116 S.Ct. 833, 133 L.Ed.2d 832 (1996).. In *Bibles,* the Court stated the purposes for which a FOIA request is made should have no bearing on whether the information need be disclosed. 117 S.Ct. at 795–96.

■ Under exemption 6, "nonintimate information about a particular individual which happens to be contained in a personnel or medical file can be withheld if its release would constitute a clearly unwarranted invasion of personal privacy." *United States Dep't of State v. Washington Post Co.,* 456 U.S. 595, 601, 102 S.Ct. 1957, 72 L.Ed.2d 358 (1982). Exemption 6, "'[was] intended to cover detailed Government records on an individual which can be identified as applying to that individual.'" *Id.* (quoting H.R.Rep. No. 1497, 89 Cong., 2nd Sess., 11 (1966), *reprinted in* 1966 U.S.C.C.A.N. 2428). It is the harm and embarrassment from disclosure of such personal information that exemption 6 seeks to avoid. *Id.* at 599, 102 S.Ct. 1957. The government's burden of withholding information under exemption 6 is heavier than exemption 7 because the invasion of privacy must be clearly unwarranted. *United States Dep't of State v. Ray,* 502 U.S. 164, 172, 112 S.Ct. 541, 116 L.Ed.2d 526 (1991).

There are four factors the court must weigh in Exemption 6 claims. 1) The interest of the party seeking disclosure; 2) the public interest in disclosure; 3) the severity of any invasion of personal privacy; and 4) the availability of alternative means to obtain the sought after information. *Multnomah Co. Medical Society v. Scott,* 825 F.2d 1410, 1413 (9th Cir.1987). Because the relative interests under the two exemptions here are similar, the court need only analyze them once while keeping in mind the relative burdens

for each exemption and resulting differences in balancing. In *Rosenfeld*, the Court stated:

> Exemptions 6 and 7(C) both involve balancing the public interests against privacy interests, but exemption 6 withholding requests require a showing of a more intrusive invasion of privacy. While exemption 6 cases have limited relevance to exemption 7(C) cases with respect to balancing, they are certainly relevant in describing how to define the interests at stake.

57 F.3d at 812.

As a preliminary matter, the court will not, on the current record, conclude that exemptions 6 and 7(C) do not apply to this case. Plaintiff argues the exemptions do not apply because the information sought relates to professional or business activities. *See Cohen v. EPA*, 575 F.Supp. 425 (D.D.C.1983). In *Cohen*, the requester sought the names of recipients of notice letters sent by the Environmental Protection Agency regarding liability for hazardous waste remediation. *Id.* at 426–27. Citing cases from the First and District of Columbia Courts of Appeal, the court ruled that exemption 7(C) was inapplicable to information regarding professional or business activities. *Id.* at 429. The court also stated:

> This information must be disclosed even if a professional reputation may be tarnished. Our circuit has recognized a privacy interest in a person's identity contained in investigatory records, however, these privacy interests have been confined to specific circumstances where disclosure may endanger the individual or threaten a source of government information.

*Id.* The court finds the proposition for non-applicability of the exemption for professional or business activities very appealing. In this case, individuals who arguably held rights to graze cattle on public lands abused the contract rights given them by the government. *See* Pl.Mem. In Support at 9. The individuals also admittedly violated federal law. The court questions whether the exemption should apply in this circumstances,

but will not follow the out of circuit precedent.

Under exemption 7(C), the court must balance the purported privacy interests of the individuals whose identities are sought against the public interest that ONDA advances. *Rosenfeld*, 57 F.3d at 811.[2] The privacy offered by this exemption is broader than exemption 6 privacy. *United States Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 756, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989). This case involved a FOIA request for the criminal records (rap sheets) of four individuals. *Id.* at 757, 109 S.Ct. 1468. The Court ruled against disclosure stating,

> we hold as a categorical matter that a third party's request for law enforcement records or information about a private citizen can reasonably be expected to invade that citizen's privacy, and that when the request seeks no "official information" about a Government agency, but merely records that the Government happens to be storing, the invasion of privacy is "unwarranted."

*Id.* at 780, 109 S.Ct. 1468. However, the Court stressed the relevance to this conclusion the fact that the information sought involved the compilation of information of a private citizen, rather than the mere record of what the government was up to. *Id.* at 775, 773, 780, 109 S.Ct. 1468.

Additionally, the Court recognized the public's interest in any individual's criminal history, especially when the person's history relates to dealings with a public agency or official. *Id.* at 774–75, 109 S.Ct. 1468. The Court stated the statutory purpose of full agency disclosure informing the public what their government is up to "is not fostered by disclosure of information about private citizens that is accumulated in various government files but that reveals little or nothing about an agency's own conduct." *Id.* at 773, 109 S.Ct. 1468.

---

**2.** ONDA does not contest that the documents in question were compiled for a law enforcement purpose. Therefore, the court will assume without deciding that the documents meet the threshold inquiry for exemption 7 application. *See*

*Wiener v. FBI*, 943 F.2d 972, 985 (9th Cir.1991) (Exemption 7 requires rational nexus between law enforcement duties and documents withheld under exemption), *cert. denied*, 505 U.S. 1212, 112 S.Ct. 3013, 120 L.Ed.2d 886 (1992).

In *Ray,* the Supreme Court stated that disclosure of individual names (as well as other identifying information) is not always a threat to privacy. 502 U.S. at 177 n. 12, 112 S.Ct. 541. However, the Court did state that whether disclosure of such information is "de minimis or significant depends on the characteristic(s) revealed by virtue of being on the particular list, and the consequences likely to ensue." *Id.* In *Ray,* the Court approved the disclosure of documents with the names of the subjects redacted because otherwise "highly personal information regarding marital and employment status, children, living conditions and attempts to enter the United States, would be linked publicly with particular named individuals." *Id.* at 175–76, 112 S.Ct. 541.

In *Rosenfeld,* the Ninth Circuit faced a FOIA request where the identities of individuals investigated by the Federal Bureau of Investigation for participation in political protests were sought. The Court stated

> the public interest in this case may not be served without disclosing the names of the investigation subjects. The public interest in this case is knowing whether and to what extent the FBI investigated individuals for participating in political protests, not federal criminal activity. Disclosing the names of the investigation subjects would make it possible to compare the FBI's investigations to a roster of the FSM's leadership. Therefore, disclosing the names of investigation subjects promotes the public interest of this FOIA request.

57 F.3d at 812.

Before balancing the interests at stake, the court must define what those interests are. The public interest involved is the citizenry's right to know how the government is enforcing and punishing the violation of land management laws by those holding contracts to use public land. This must be balanced against a person's right not to have their name revealed after admittedly violating federal law.

ONDA advocates disclosure of the names in this case "because the individuals concerned have admitted breaking the law, and because they are doing business with the federal government." Pl.Mem. In Support at 9. ONDA also states that "[i]f the cattle trespassers are not identified by name, it is impossible for the public to determine whether the government deals consistently with those individuals and whether it enforces the regulations more severely against some that against others." *Id.* at 10. ONDA also asserts that it has no other way of securing the information sought in its request. The government does not challenge this assertion. Finally, ONDA asserts that it has no interest in contacting the individuals should their names be released.

Defendant challenges disclosure primarily by arguing that revealing the individual names is precluded by relevant case law. Defendant also argues the request only seeks information about individuals and will not shed light on agency actions. Additionally, DOI asserts that BLM's enforcement patterns can be gleaned from the redacted records.

■ On the facts of this case, the court concludes that the balance weighs in favor of disclosure. First, the information sought is strictly the names of individuals who admitted violating federal laws. Therefore, this case is different from those cases that withhold names of individuals who were merely suspected or investigated for potential criminal liability. Secondly, the information sought here is not the highly personal information contained in a complied record like the rap sheets in *Reporters Committee.* Additionally, plaintiffs have no other way to access this information and have represented to the court that it will not be used to contact or harass the individual trespassers.

While the court does not conclude as a matter of law that exemption 7(C) does not apply to professional or business records, the relationship of the individual and the government does weigh in favor of disclosure. The subjects in the records sought were not merely private citizens. This relationship between the cattle trespassers operating under contract or permit with the government is at least quasi-business related. Attached to defendant's reply brief as exhibit A is a copy of some documents at issue with names redacted. Those records show that one trespass event was accomplished by 125 head of cattle and another herd contained 200 head

of cattle. Exh A. at 3, 15. Additionally, defendant has offered no evidence that these were merely individuals privately grazing cattle for their own use. Therefore, the court accepts ONDA's arguments regarding the professional or business nature of the cattle trespassers.

Because the only information sought is the names of certain cattle trespassers for the purpose of monitoring the BLM's treatment and enforcement of federal grazing laws, the court concludes the disclosure will not result in an unwarranted invasion of personal privacy under exemption 7(C).[3] Therefore, plaintiff's cross-motion for summary judgment on this issue should be granted. Defendant's motion should be denied.

## II. FEE WAIVER

FOIA provides that

 [d]ocuments shall be furnished without any charge or at a charge reduced below the fees established under clause (ii) if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester.

5 U.S.C. § 552(a)(4)(A)(iii). The waiver of fees issue is determined de novo by the district court, but that review must be limited to the record before the agency. *McClellan Ecological Seepage Situation v. Carlucci,* 835 F.2d 1282, 1284 (9th Cir.1987) (citing 5 U.S.C. § 552(a)(4)(A)(vii)). The fee waiver provision must be "liberally construed in favor of noncommercial requesters." *Id.* (quoting 132 Cong.Rec. S14298 (Sept. 30, 1986) (Sen.Leahy)).

FOIA requires agencies to promulgate regulations establishing procedures for determining fee waiver requests. 5 U.S.C. § 552(a)(4)(A)(i). DOI's fee waiver regulations are set out in 43 C.F.R. § 2.21. The regulations provide a three prong analysis in determining whether the information will significantly contribute to public understanding of governmental activities:

(I) Does the record concern the operation or activities of the government? (ii) If the record concerns the operations or activities of the government, is its disclosure likely to contribute to public understanding of these operations and activities? (iii) If there is likely to be a contribution to public understanding, will that contribution be significant.

*Id.* at § 2.21(a)(2)(i)–(iii). The regulations provide that a contribution will be significant if the information requested is "new, clearly supports public oversight of Department operations, ... or otherwise confirms or clarifies data on past or present operations of the Department." *Id.* at § 2.21(a)(2)(iii). On the other hand, contribution to public understanding will not be significant if the information sought is already in the public domain. *Id.*

Recently, the Ninth Circuit analyzed fee waiver requests involving the regulations quoted above. *Friends of the Coast Fork v. United States Dep't of the Interior,* 110 F.3d 53 (9th Cir.1997). In that case, plaintiffs sought a fee waiver for duplication expenses for documents requested from the U.S. Fish and Wildlife Service. *Id.* at 54. Initially, and on appeal the agency denied the fee waiver request for the sole reason that the documents were available in two agency reading rooms located in other cities. *Id.* Relying on the DOI's regulations, the Court found that plaintiffs made a prima facie showing that disclosure was likely to significantly contribute to public understanding because "[plaintiffs] identified why they wanted the administrative record, what they intended to do with it, to whom they planned on distributing it, and the zoological expertise of their membership." *Id.* at 55.

More important to this case, the Court noted that defendants offered only one reason for the fee waiver denial. *Id.*

True, requesters bear the initial burden of satisfying the statutory and regulatory standards for a fee waiver, ... but the government's denial letter must be reasonably calculated to put the requester on

---

**3.** Because the court concludes defendant's did not meet their burden under exemption 7(C), there is no need to address the more onerous

exemption 6. *See Reporters Committee,* 489 U.S. at 762 n. 12, 109 S.Ct. 1468.

notice as to the deficiencies in the requester's case. On judicial review, we cannot consider new reasons offered by the agency not raised in the denial letter.... [O]n judicial review, the agency must stand on whatever reasons for denial it gave in the administrative· proceeding. If those reasons are inadequate, and if the requesters meet their burden, then a full fee waiver is in order.

*Id.* The Court ordered a full fee waiver because the availability of the documents in public reading rooms did not overcome plaintiffs' prima facie showing. *Id.* at 55–56.

■ ONDA sought a fee waiver request "for reproduction of wildlife, soil, and water quality monitoring data, on which the Environmental Assessment for the AMP is based." Pl.Mem. In Support at 12. ONDA's lengthy articulation of its reasons for requesting the information and what it would do with that information is quoted in the background section. ONDA also stated how they would disseminate the information and to whom. Under the Ninth Circuit's test articulated in *Friends,* ONDA has established a prima facie showing that contribution to public understanding of the activities of BLM will be significant.

In its initial response to ONDA's request, the BLM did not address the fee waiver issue. DOI admits in its opening brief that it should have considered the fee waiver issue. *See* Def.Mem. In Support at 9. The failure to do so apparently stemmed from confusion regarding plaintiff's offer to pay up to $20.00 should it ultimately lose the fee waiver issue. *See* Exh. B, p. 3 attached to defendant's answer. Therefore, defendant must stand on the reasons offered in the appeal decision.

In that letter, the DOI stated the subject documents "concern the operations and activities of BLM on the grazing allotment issue. At issue are the second and third criterion, whether disclosure likely will contribute to public understanding of these operations and activities, and whether the contribution will be significant." Pl.Exh 3 at 3. However, in the supporting legal memorandum, upon which the DOI relied, the agency determined

that ONDA's capability to disseminate the information requested would contribute to public understanding. Pl.Exh. 4 at 5. The DOI then denied the request because it felt the contribution to public understanding would not be significant. *Id.* at 5–6; Pl.Exh. 3 at 3. DOI determined the contribution would not be significant because

BLM developed the AMP though a public process, consistent with the National Environmental Policy Act (NEPA). Under the NEPA, BLM conducted an environmental assessment (EA) on the proposed plan, in which BLM maintained a mailing list of over fifty interested parties, including ONDA and many of the groups it represents, sending them information on the EA. A draft of the EA with a request for comments was sent to those on the mailing list, including ONDA. The BLM considered the comments when it issued its final decision on the EA.

Pl.Exh. 3 at 3. However, the supporting memorandum acknowledged that BLM did not disseminate the "supporting data now sought by ONDA. Nevertheless, this information has been available for the asking since the BLM began to develop the AMP." Pl.Exh. 4 at 6.[4]

Nothing in the administrative record shows that defendant considered the three factors for determining significance outlined in 43 C.F.R. § 2.21(a)(2)(iii). DOI admitted the information was supporting data that had not been released although it was available. Therefore the information sought was new. Because it was supporting data is would also undoubtedly clarify pre-existing information on the BLM's activities concerning the AMP. Furthermore, release of this information could also lead to public scrutiny of the BLM's conclusions from and use of the supporting data. Defendant did not fully follow its own regulations in determining plaintiff's fee waiver request. The record shows the regulations, applied appropriately, support disclosure. Defendant has not met its burden in support of denying a fee waiver, and therefore plaintiff is entitled to a full fee

---

**4.** The supporting data referred to apparently includes "monitoring data and surveys." Pl.Exh. 4 at 6.

waiver. Plaintiff's cross-motion for summary judgment should be granted and defendants motion for summary judgment should be denied.

## CONCLUSION

Because disclosure of the identities of the cattle trespassers in question will not invade the privacy of those individuals, BLM should be required to turn that information over. Furthermore, plaintiff should be granted a full fee waiver for all documents sought in its request. Accordingly, defendant's motion (# 9) for summary judgment should be denied and plaintiff's cross-motion (# 13) for summary judgment should be granted.